Mr. Cutler, I guess you know the drill. We'll give you 3 minutes of uninterrupted time. You've saved 2 minutes for rebuttal, so you may proceed. Thank you, Your Honor. If it pleases the Court, I represent Timothy Williams. This appeal is about a restitution order to Chase from a criminal matter or mail fraud conviction involving an award of $23,567.57 to Chase. Now, there's some major points that I'd like to point out first. Chase's loss was caused by an earlier default on credit card debt prior to the indicted scheme. The loss was not directly or approximately caused by the defendant's conduct in the indicted scheme. The indictment charges an effort to defraud credit reporting agencies and not the creditors, other than Department Stores National Bank, which was a bank for Macy's Credit Cards, and not Chase. District Court erred in making factual findings that the charge scheme was the proximate cause of the loss, and the Court erred in construing a law on proximate cause. Now, Chase's loss was not directly or approximately caused by the conduct of the defendant in the indicted scheme. The loss occurred when the defendant defaulted on his credit cards. This was prior to the scheme that was indicted. And it involved default on consumer loans being credit cards. The District Court erred, finding it had to assume the defendant was never going to pay to conclude that the default caused the loss. The defendant had not paid prior to the charge scheme. The debt was on credit reports. Defendant argued these points at GA-4-8. And ultimately, the District Court held defendant to a greater standard than banks and governments are held to... Excuse me. You have one more minute. Okay. When they...to recover on credit cards. Counsel agreed there was a loss in the moment of the write-off, but that was predicated on the judge's hypothetical that there was no loss on the default. Now, the indictment itself, Chase's loss, was not a result of defendant's conduct in the charge scheme. The scheme charged for the purpose of removing credit card listings and credit reports. The victims were the credit card agencies. And the victims were not creditors, including Chase. But defendant allocated that he attempted to obtain property from credit reporting agencies, not creditors. And he also allocated he mailed false documents to the credit reporting agencies, not to the creditors, as is alleged throughout the government's brief. There's no allegation that Chase's credit card debt was fraudulently obtained, and there was no evidence that Chase's debt was fraudulently obtained. The government writes in its briefs that defendant mailed fraudulent documents to the credit reporting agencies and financial institutions to write off debt. And unless government is referring to Department Stores National Bank, this is not in the indictment. Government never approved financial institutions other than Department Stores National Bank received fraudulent mailings from defendant. The government never approved the defendant sought financial institutions other than Department Stores National Bank to write off debts. So the government cites in its brief the purpose of the scheme was to induce various financial institutions to write off debts that Williams owed to those institutions. Again, there is a cite to PSR Paragraph 6. PSR Paragraph 6 refers to Department Stores National Bank or it refers to relevant conduct. And restitution is not available for relevant conduct in the Second Circuit, citing U.S. v. Gillard. In Sulkowski, another case, restitution is not available for conduct outside the statute of limitations. The government also states that the intended loss stipulation is inconsistent with the theory that defendant has about the restitution order. In that there was a loss of $207,000 in intended loss, which was predicated on a chart of listed consumer debt at Equifax. However, what's inconsistent is the indictment, which charges $0 fraud against the credit reporting agencies. So the inconsistency with the indictment is the fault of the drafter, not the defendant. Mr. Cutler, I want to just pause so that the panel can ask some questions. Judge Winter, do you have any questions for Mr. Cutler? No, I don't. And Judge Wesley, do you have any questions? No, thank you very much. No. So I guess my question is this. It does seem that this scheme was to get creditors to discharge the debt. In other words, to say that this was a receivable for Chase presumably, and then after they were told it was fraud, that it was based on identity theft, they wrote it off, right? Yes, that's what happened, Your Honor. But that was never charged in the indictment. And what the government posited at one point was that when you submit documents like this saying there's an identity theft, you get a freeze on your account, and that allows you to take out more credit. So there is an alternative explanation for what the purpose of the scheme was. And I must bring also back to the point that the credit cards defaulted earlier than the scheme itself. Well, defaulted in the sense that the debt was written off? Are you just saying he wasn't – He wasn't paying it, Judge. He hadn't paid it for a number of months. That doesn't mean that it wasn't still something that could be recovered by the creditor, right? I disagree with that, Judge. I think that as soon as he wasn't paying anymore, that was for restitutionary purposes. That indicated there was a default on the debt and that there was a loss. If they did not – if the creditors did not believe that the charges were made by somebody else, they could have then gone after your client and tried to recover, right? I'm sorry. They could have gone after him to recover after they wrote it off? Is that what you're saying? I'm just saying, well, they didn't write it off until after he fraudulently induced them to write it off, right? Well, I don't think that was his purpose, and it certainly wasn't the charge purpose of the indictment. So it was certainly something outside the indictment in the case law. I thought it makes that point that you – the Sulkowski case was you can't have restitution for statute of limitations, stuff that is outside the statute of limitations. And similarly this, you know, the default itself, which caused the loss, was well prior to the charge scheme. Well, you're saying that the creditors wrote off these charges before he made the fraud? No, I'm not saying that. Of course you're not. No, I'm not saying that. I think what you're saying is that they wouldn't – I think what you're saying is that they would not likely have recovered. Had he not engaged in this fraud, they wouldn't have gotten 100 cents on the dollar anyway. That's really what you're arguing. Well, by the time the defendant was in court, he was an indigent. You know, he had CJA counsel. He had CJA counsel on this appeal. And also the court found at sentencing he had no ability to pay for the fine. Of course this was afterwards, but it's likely as well that he was indigent at the time. So there was never going to be a payment on this credit card debt. Well, I mean we don't know that because it was never – I mean the creditors never got a chance to either compel him into bankruptcy or to move on other assets. They didn't get a chance to do that because they were misled into writing off the entire debt. Correct? Well, they could have sued him earlier before they received that from the credit reporting agency, before they received these false documents. And they didn't take any action to go against him. And it's not – he could have sent the documents directly to Chase, but he didn't. He sent them to credit reporting agencies to remove the listing from the credit report. And the function of the credit reports is to indicate to other potential creditors whether the particular person is a good credit risk. It has nothing to do with writing the debt off or not. All right, any other questions from the panel? Okay, we're going to be reserving two minutes for rebuttal. So we'll hear from Mr. Hafetz. Good morning, Your Honors. Josh Hafetz for the United States and like defense counsel, I represent the government in the proceedings below. May it please the Court, there are two issues in this appeal. The first is, did the government establish by a preponderance of the evidence that the defendant's mail fraud scheme charged in the indictment and to which he pleaded guilty was the direct and proximate cause of Chase's loss? The answer is unambiguously yes. The MVRA is clear that in a case like this one that involves a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme is entitled to restitution. There is no question that the crime here involved a fraudulent scheme. That's the fraudulent scheme charged in the indictment. It's important to pause for a moment and underscore what the scheme really was. And all of this is set forth both in the indictment and the uncontested facts and the pre-sentence report. The defendant would run off credit card debt and seek to wipe out that debt both on the credit card, credit bureau reports, and with creditors. He did this by falsely claiming his identity had been stolen and he hadn't opened the account. There is no question that Williams' scheme directly harmed Chase in the amount of the restitution imposed. Chase was included in the fraudulent letters sent to Experian, Equifax, and TransUnion, the three credit bureaus. That's at GA 17 and 18. And when I say Chase, I mean the actual specific accounts that are subject to restitution. Chase submitted an affidavit, the language of which is unambiguous. Both credit cards, meaning the credit card subject to restitution, were closed as fraudulent applications by Chase as a result of an identity theft dispute filed through credit bureau reporting agency Experian. At sentencing, when the district court got right to the heart of the issue, which Your Honor just focused on, up until the moment that Chase took a loss and wrote off the debt as fraud, as a direct result of his letter, he owed them, the defendant owed Chase that money. As a result of the fraud, the second that they wrote off the debt, he no longer owed them that money. I think it's important that a critical guidepost in this case is this court's decision in United States v. Merino, which upheld a restitution order of $60 million imposed on a defendant convicted of a misprison of a felony for failing to alert authorities of a Ponzi scheme. The court rejected the argument that the defendant's failure to disclose the fraud was not the direct and proximate cause of the losses. The argument in that case was it was too attenuated. There's no attenuation here. The letters that the defendant repeatedly sent included the credit cards that Chase ultimately wiped off. And as Chase itself submitted, that was the direct cause of the loss. The entire point of the proximate causation requirement is to make sure that there's not too much of an attenuation between the loss cause and the injury that caused it. None of that is present here. There is no concern about attenuation. A critical point, and the last point I'll make on this before there's questions, foreseeability is a critical factor in this, and that's outlined in the court's decision in Merino. In this case, the loss wasn't just foreseeable. It was intended. Paragraph 10 of the pre-sentence report specifically states, to the submission to the Equifax, and Equifax is a stand-in for the credit bureau, the defendant attempted to fraudulently remove debt from his credit card report and his credit card account. The entire purpose of the scheme was for Mr. Williams not to owe money anymore, and he achieved it when Chase wrote off the debt as a result of the letter. All right, let's take a pause there and see if the panel has any questions. Judge Winter, do you have any questions for Mr. Hibbert? No, I don't. And Judge Wesley? No, I'm good, thank you. All right, I don't either, Mr. Hibbert, so thanks. We'll now hear from Mr. Cutler for a couple of minutes of rebuttal. Thank you, Your Honor. I mean, this just brings me back to the point that the loss had already occurred, and as a result, you know, the notion that there was a scheme and that there was a direct causality to the loss of Chase when it wrote off the credit card debt sometime later is not valid. And the fact that the PSR, as Mr. Hibbert just described in paragraph 10, says he intended to remove the credit card debt, that was not charged in the indictment. And as far as I'm concerned, you know, the PSR came to some conclusions, which I've already said was either based on relevant conduct or based on the fact that in one instance, Department Stores National Bank, he did write directly with his fraudulent documents to that bank. In Solkowski, the Second Circuit stated that you must derive the amount of the loss to be repaid from conduct within the offense of conviction. We do not have that here. Excuse me, you have one more minute. Yes, similarly, in In re local number 46 Metallic Lathers Union reinforcing iron workers, the court, the Second Circuit decided that the union was not a victim of money laundering because the offense of conviction could not recover. The offense of conviction did not include what happened there where they paid a company paid union workers to avoid union costs owed by the company. In other words, the money laundering scheme was finished upon the receipt of the laundered money. And then to go to the Marino case there. Marino court cited the Congressional Committee notes, which stated, quote, the committee believes that losses in which the amount of the victim's losses not clearly causally linked to the offense should not be subject to mandatory restitution, end quote. And then in USP Lisa, an unpublished Second Circuit opinion, the court, the Second Circuit stated the defendant cannot be held to pay restitution for losses caused by uncharged conduct that extends beyond the scheme included as an element of the offense. That's what we have here. We have uncharged conduct, meaning the default on the credit cards that caused the loss, and it can't extend to that. Going further, I did cite in my brief the Hatfield case, which was an Eastern District case, but it coincides with some appellate courts in other districts to the point that restitution is unavailable when the conduct underlying the offense of conviction is too far removed, actually, or temporarily from the law. And that's certainly consistent with Second Circuit law here. And I would submit that this was factually and temporarily removed from the laws that chase when they wrote off the wrote off the credit card amount. And the appellate decision, I think we're getting close to your treatment. I think we're past the two minutes. So let me see if the panel has questions as additional questions. Judge Winter or Judge Wesley, do you have any questions? No, not for me. All right. So we'll reserve decision. But thank you both very much. Thank you.